Sutliff, J.
At the May term, 1856, of the court of common pleas of Hamilton county, the plaintiff in error was convicted of murder in the second degree, and judgment of perpetual imprisonment was pronounced against him. He now asks that this judgment may be reversed for alleged error in the record.
It is alleged for error, that the offense of murder in either the first or second degree is not in fact charged against him in the indictment; and that the judgment is, for that cause, erroneous. The following is the language of the indictment containing the charge, to which the assignment of error relates:
“ That the said John. Kain, with the leaden bullet aforesaid, out of the pistol aforesaid, by the said John Kain discharged and shot off, as aforesaid, then and there purposely and of deliberate and premeditated malice, did strike, prostrate and wound him the said Richard Singleton, in upon the back part of the head of him the said Richard Singleton, giving to him, the said Richard Singleton, then and there, with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid, by the said John Kain, in upon the aforesaid back part of the head of him, the said Richard Singleton, one mortal wound of the length of half an inch, and of the breadth of half an inch, and of the depth of four inches; of which said mortal wound the said Richard Singleton, from the said twenty-seventh day of April, in the year eighteen hundred and fifty-six, until the thirtieth day of the same month of April, in the year last aforesaid, at the county of Hamilton aforesaid, did languish, and, languishing, did live, on which said thirtieth day of April, in the year- last aforesaid, the said Richard Singleton, at the county of Hamilton aforesaid, of the mortal wound aforesaid, died.........And so the jurors aforesaid, upon their oaths and affirmations aforesaid, do say, that the said John Kain,.....him the said Richard Singleton, in the manner and by the means aforesaid, at the county of Hamilton aforesaid, purposely and of deliberate and premeditated malice, did kill and murder; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.”
Tfie indictment is predicated upon sections one and two *308 of the “ act for the punishment of crimes,” passed March 7, 1835. It is provided by sections one and two of that act as follows:
“ See. 1. That if any person shall purposely, and of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death.
“ Sec. 2. That if any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof shall be imprisoned in the penitentiary and kept at hard labor during life.”
The conviction and judgment were under the second section.
Each of the above mentioned sections, it is seen, contains the word “ purposely ” as qualifying and characterizing the offense of killing.
The objection urged to the indictment in this case is, that the accused is not thereby charged with having “ purposely killed,” but with only having purposely'inflicted the wound from which death ensued.
An inspection df the record shows the fact of such omission on the part of the pleader to charge the accused with having purposely killed.
The language of the statute, upon which the judgment was entered, is as follows: “ That if any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be guilty,” etc., and providing that such judgment as rendered in this case shall thereupon, on conviction, be pronounced.
Does the language of the indictment express the offense so described by the statute ? If so, the same statute describing the offense, has prescribed the judgment rendered, and there is no error; otherwise there is, as it is only on conviction of the offense so described by the statute that such judgment is authorized.
The following is the language of the indictment in this particular part of the description of the offense, to which *309 the objection of the plaintiff in error is urged: “ That the said John Kain,” etc., . . . . “ then and there, purposely and of deliberate and premeditated malice, did strike, prostrate and wound, him, the said Richard Singleton, in upon the back part of the head,” etc.; whereof, it it is charged, the said Singleton died. But it is not charged that the accused so purposely . . . did strike the said Singleton, purposely or with the intent him the said Richard Singleton thereby to kill. Nor are there any words in the indictment charging that the accused did thereby purposely kill the said Singleton.
It is urged, however, in support of this indictment, that it is in the prescribed and approved form of an indictment charging the common law crime of murder; and that similar forms of indictment are to be occasionally found in the records, and even in reported cases in this state, and which have been heretofore sustained by the' Supreme Court.
The indictment, it is true, appears to be framed after approved and prescribed precedents for charging the common law crime of murder; and the indictment would, unquestionably, be sufficient in this case, if our statutory description of the crime of murder were identical with the common law definition of the crime.
But it is not. The common law description of the crime of murder, as expressed by Sir Edward Coke, is as follows: “ Where a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king’s peace, with malice aforethought, either express or implied.” It lacks that essential requisite of “purposely” killing, required by our statute to constitute murder in this state. Hence, it does not follow that because the indictment is sufficient and in proper form to charge the crime of murder at common law, that, therefore, it is sufficient to charge the statutory crime of murder in Ohio. But, when it is seen, as it appears by comparing the common law description of the crime with our statutory defi *310 nition, that they are different; that the statutory crime contains an essential ingredient not contained in the common law, it would seem rather to follow that the common law form of indictment is insufficient to charge the statutory crime of murder in this state. By referring to the several statutes defining the crime of murder, heretofore enacted, both under the territorial and state governments, it will be perceived that previous to 1815, the word “ purposely ” was not used in our statutory definition of murder. The first statute enacted upon the subject is that of the territorial legislature of September 6, 1788, providing as follows:
“ That if any person or persons shall, with malice aforethought, kill or slay another person, he, she or they, so offending, shall be deemed guilty of murder, and upon conviction thereof shall suffer the pains of death.”
On the 15th day of January,, 1805, that statute was repealed, and one was enacted by the general assembly of the state, in the following language:
“ That if any person of sound memory and discretion, shall unlawfully kill any human being, and in the public peace, with malice aforethought, either express or implied, and being thereof legally convicted, shall suffer death.”
By the act of 17th of February, 1809, this statute of 1805 was repealed, but re-enacted in the same language; and continued in force until repealed by the act of January 27, 1815. By that act, the legislature provided as follows :
“ That if any person shall purposely, of deliberated malice, or in the perpetration or attempt to-perpetrate any rape, arson, robbery or burglary, kill another, every such person, his or her aiders,--abettors, counselors and procurers, shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death.”
The same act also provided for the punishment of murder in the second degree, inserting in like manner, for the first time, in the description of that crime, the word “purposely,” as follows:
“ That if any person shall, purposely and maliciously, but without deliberation and premeditated malice, kill another, every such person, his or her aiders and abettors, shall be deemed guilty of murder in the second degree, and upon *311 conviction thereof, shall be imprisoned and kept at hard labor not more than twenty-one years, nor less than seven years.”
This act of 1815, was repealed and succeeded by the act of February 26, 1824, which provides as follows:
“ Sec. 1. That if any person shall purposely, of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate any rape, arson, robbery, or burglary, kill another, every such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death.
“ Sec. 2. That if any person shall purposely and maliciously, but without deliberate and premeditated malice, kill another, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof shall be imprisoned in the penitentiary and kept at hard labor during life.”
These sections were repealed and re-enacted in the same language by the act of March 3,1831, and from that time continued in force until March 7, 1835, when the same were repealed, and succeeded by the statute under which the indictment under consideration was framed.
It is evident, from this view of the several statutes heretofore enacted, that such a form of indictment as this was sufficient, and the proper form previous to the statute of 1815. By that statute, for reasons satisfactory to the legislature, it was made essential to constitute the statutory offense of murder that the perpetrator should purposely kill.
The general rule applicable to criminal pleadings, requires that a crime defined by statute should be charged in the indictment substantially in the language of the statute.
The statute of Pennsylvania, of 1794, classified the different kinds of murder as existing at common law in that state, into two classes, specifying what kinds should constitute murder of the first degree, and mitigating the common law penalty of death, existing also in that state, to imprisonment as to all murders except those of the first class; and also providing that if the jury found the accused guilty of murder, they should ascertain, by their verdict, whether the murder was of the first or second degree. Under this statute the supreme court of that state has held it necessary to so far vary the form of the indictment for *312 murder of th.Q first degree as to show the murder to belong to that class, in order to authorize a sentence of death, where the jury had neglected to ascertain by their verdict the murder to be of the first degree. Johnson v. The Commonwealth, 24 Penn. St. Rep. 386.
The indictment, in that case, was in the common law form, except the conclusion, which is not given by the reporter. The killing was not ascertained by the verdict of the jury to be a murder of the first degree, as it would have been if the record, either by the special finding of the jury, or by their general finding upon the indictment, had shown the killing to have been willful, deliberate and premeditated. The indictment, in that case, as in this, failed to charge, in the body of the indictment, that the accused intended to kill, or that the killing was willful, deliberate or premeditated.
After the jury had found “the defendant guilty in manner and form as he stands indicted,” a motion in arrest of judgment was filed on his behalf, for that the jury had not in their verdict ascertained whether the murder was of the first or second degree, as required by the 2d section of the act of 22d April, 1794. The provision of that section is that the jury, “if they find such person guilty thereof, shall ascertain in their verdict, whether it be murder of the first or second degree.” The conviction, under a charge of murder in that state, might, of course, be, as under our statute, for murder in either degree, and hence the necessity of the jury specifying, if they found the accused dguilty of murder in the first degree. But inasmuch as the jury did not find, by their verdict, that the killing was willful, etc., or “ascertain in their verdict,” in the language of the statute, that the murder was of the first degree, it is not to be presumed that the prosecution demanded, or that the court would award a sentence for mux;der in the first degree; unless in the absence of its being so ascertained by the verdict, it was at least ■denominated in some part of the indictment, a willful, *313 premeditated killing, or a murder of the first degree, and so found by a general verdict. There is no doubt, therefore, that the prosecution and the court before which Johnson was tried, relied upon the averments in the conclusion of that indictment, as charging a murder in the first degree. The conclusion of that indictment is not given in the report; but it doubtless concluded like this, in the usual form, “and so the jurors aforesaid, upon their oaths, etc., do say, etc., that, etc., the said Samuel Johnson, etc., did willfully, etc., kill and murder,” etc. But the coui’t overruled the motion in arrest, and passed sentence of death upon the accused.
It was assigned for error that the court erred in passing sentence of death, it not being warranted by the verdict. Chief Justice Lewis, in pronouncing the judgment of the supreme court in that case, made use of the following language as to the statutory classification of the crime, as applicable to that ease: “A premeditated intention to destroy life is an indispensable ingredient in that offense,” (murder in the first degree.) “The clear and positive provisions of the act of 1794, fix the interpretation beyond a doubt. We have seen that the indictment is destitute of the averments required by the statute to constitute murder of the first degree.” And that court were unanimous in reversing the sentence.
And yet we are told, in view of the express provisions of that statute of 1794, and as I think the clear and positive words of condemnation expressed by the supreme court in that ease against the indictment, that the case has no relation to the present one, and that the indictment under that statute in Pennsylvania is framed precisely as at common law, and that it is from the verdict of the jury that it is to be ascertained whether it is a murder of the first or second degree. It seems to me, however, that case has a relation to the present in this: the jury having neglected' to determine by their verdict, in accordance with section two of their statute, the fact of its being a murder of *314 the first degree, but rendering just such a verdict as rendered in this state, to wit, “guilty in manner and form as he stands charged in the indictment,” the indictment was, then, in that case, held insufficient. But the jury failing to find specially, as directed by section two of that act, the fact of its being a murder of the first degree, and simply finding him guilty “ as charged in the indictment,” it presented precisely the same question presented in this case, to wit, whether the indictment itself sufficiently charged the crime for which the accused had been sentenced. And the court held it did not, for the reason that, in the language of the court, it was “ destitute of the averments required by the statute to constitute murder of the first degree.”
It is true, the supreme court of Pennsylvania has held that under the act of 1794, an indictment in the common law foi’m, with the special finding of the jury, as prescribed by section two of the act, that the murder was of the first class was sufficient. But why? Not that the indictment in the common law form could possibly be sufficient to charge a statutory offense differing in any essential particular from the common law offense, but because the crime of murder in that state was not, as in this, created by statute. The crime of murder, in Pennsylvania, previous to the statute of 1794, was a common law crime; and so it was held to continue a crime at common law, and that the statute only specified what kinds of murder should be classified togethei*, and, as before stated, mitigated the common law punishment of death, (which also obtained in that state independent of the statute,) as to all kinds of murder not falling in the first class. In that state, the crime remaining a common law offense, is of course sufficiently described by the common law form of indictment; and if the jury had found specially, under the 2d section of their statute, that the murder was of the first degree, the statute would be complied with, and the verdict would of course make a perfect record and sustain a sentence. But if the indictment in the case of Johnson had charged *315 the murder to be willful, deliberate and premeditated, and tbe jury bad then neglected, as they did, to find it to be murder of the first degree, still, their verdict of guilty, “ as charged in tbe indictment,” would then have been good, and tbe sentence would not bave been reversed. "When, therefore, it is considered that we bave no statute requiring tbe jury to find specially that tbe killing was intentional; and also that tbe crime of murder does not exist at common law in this state, but is solely dependent upon our statute, by which it is defined and alone exists, it is evident that tbe statutory offense in this state must be charged in strict conformity with tbe statute. Indeed, as soon as it is stated that no part of tbe crime of murder is statutory in Pennsylvania, but entirely a common law offense, and that tbe crime in this state is entirely a statutory offense, and it being admitted that tbe purpose to kill is made, by tbe statute, an essential ingredient of tbe crime, it is obviously as necessary for tbe “purpose” to be charged in tbe indictment in this state, as it is that malice, or any other essential constituent part of tbe crime of murder at common law, should be charged in tbe indictment in Pennsylvania.
Erom tbe brief review of tbe early statutes of this state, we at once perceive bow this form of an indictment (which was tbe proper form under each of tbe several statutes, defining tbe crime of murder in this state, previous to that of 1815) should bave still occasionally continued in use.
Safety in pleading requires respect, and even adherence to be generally given to approved precedents. A crime of so great enormity as that of murder, in most of tbe counties of this state, has been of very rare occurrence. There are comparatively few forms of indictment for tbe offense, to be found in tbe records of this state, which bave passed before tbe supreme court, and been approved by that court. It is not singular that tbe few forms thus found in tbe reported cases, and in tbe records of tbe supreme court on the'circuit, and sustained by tbe court, should have been *316 regarded by the pleader occasionally as safe precedents, without having reflected that the change in the statute of 1815 rendered such precedents defective.
The effect of the change in our criminal statute in this particular, has been a realization, in this case, of the inconvenience, urged at all times against changes in the description, by the statute, of common law offenses — a loss of the benefit of well established precedents in administering the law.
But the legislature having seen fit, for the benefits which they regarded more than compensatory for such inconvenience, to make the statutory change in the description of the crime of murder, we have only to accept and pass upon the statute as enacted and governing the proceedings in this case. The policy of such frequent changes in the criminal statutes of the state belongs exclusively to the consideration of the legislature. It is only the fact of such statutory change of our criminal statutes, that comes properly before us for consideration.
It is however urged that, in this case, the alleged error may be considered cured by the expression in the conclusion of the indictment: “ And so the jurors aforesaid, upon their oaths and affirmations aforesaid, do say that the said John Kain,” etc., “him the said Richard Singleton, in the manner and hy the means aforesaid, purposely, and of premeditated malice, did kill and murder, contrary to the form of the statute, and against the peace and dignity of the State of Ohio.”
But this concluding averment in the indictment is nothing but an averment of a legal conclusion, and cannot be received as adding anything to the facts already charged, and from which alone the conclusion is professedly deduced, thus: “And so the jurors,” etc., “ do say that the said John Kain,” etc., “ in the manner aforesaid, at the county aforesaid,” etc., “ purposely, and of deliberate and premeditated malice, did kill and murder.” What more, or less, could be regarded as meant by the expression, *317 <e And so the jurors do say,” than this: that from the facts so hereinbefore charged, they have come to the conclusion that the defendant is guilty, in the words of the statute, to wit, of purposely killing and murdering ? But what are the facts thereinbefore charged ? Certainly, if this were now presented as a new question, instead of one to be determined by long-established precedent and authority, I apprehend every lawyer, having respect to the rules of pleading, would arrive at the same conclusion — that if the offense is defectively charged, in the charging part of the indictment, the defect cannot be regarded as cured by this concluding averment. When we recur to the offense charged, and the averments of the indictment from which the conclusion is so expressed, that Kain did purposely kill and murder, we find that the jurors do not charge, that in making the assault, or in the infliction of the wound, Kain purposed or intended to kill, but only that he purposely discharged the pistol at the said Singleton; and from such statement of the facts, as so charged, their conclusion that Kain purposely did kill, is a non sequituf. It is a conclusion which doe snot necessarily follow from all the facts and averments found and charged against the accused.
■ Thus, it seems to me, that if this were a new question, and now for the first time presented for adjudication, whether such defective charge of an offense in an indictment could be regarded as cured by the concluding averment, “And so the jurors do say,” etc., we should unhesitatingly decide that it could not. Elementary writers upon the subject inform us, that while the general rules and principles of pleading, with respect to the structure of declarations in civil actions, are applicable to indictments, a greater degree of certainty in the application of the rules obtains with regard to indictments, and a degree of strictness is required in an indictment, which is not always necessary in a declaration. The charge in the indictment must contain a certain description of the crime, and a statement of the facts constituting the offense. An indict- *318 meat, it is said, ought to be certain to every intent, and without any intendment to the contrary. Lord Mansfield and other eminent judges have insisted, that to say that an indictment ought to have the same certainty as a declaration, and that the rules applicable to civil pleadings are applicable to criminal accusations, does not sufficiently express the degree of precision required, as technical objections are much more frequently admitted to prevail in criminal than in civil proceedings. And yet, in a declaration, it would not be pretended that a cause of action defectively stated, could be cured by the usual conclusion: Ci And so the plaintiff' saith that he is injured, and hath sustained damage to the amount of $-, and ought to have and recover the same of the defendant; and therefore brings suit,” etc. Such a conclusion is never regarded as adding anything to the preceding averments in the declaration, expressing the real cause of action relied upon for a recovery. And by rules of pleading, as well as in reason, much less should the concluding averments of an indictment cure a defect in the description and charge of the exime, as therein set forth and stated. Indeed, so little importance is attached to the office of the conclusion of an indictment in describing the offense, that neither time nor place is ever required to be alleged as to any averments contained therein. And yet it never is allowable to dispense with either time or place, in the charge and description of the offense relied upon by the prosecution, as expressed in the indictment.
But, I apprehend, the precedents and authorities will be found upon this question nearly uniform, as expressed by the earliest English reported cases, and pretty uniformly followed, as well by the American courts, as by their own, down to the present time. And in view of these authorities, which are extensively referred to, it is laid down by Mr. Archbold in his Summary of Pleading and Evidence, page 55, that “ Every fact and circumstance stated in the indictment must be laid positively, that is, the indictment *319 must directly affirm that the defendant did so and so, or that such a fact happened under such and such circumstances,” etc. So, in the case of King v. Cox, Leach. Cro. Law 82, it was held by all the judges, that to describe the statutory offense of perjury on the 5th Eliz. C. 9, in which the word “ willfully ” was used, a charge and description of the offense that the accused had “falsely, maliciously, toickedly and corruptly sworn,” etc., although good and sufficient to charge the common law offense of perjury, was insufficient; inasmuch as the word “ willfully is made essential by the statute. In 2 Hawk. P. C. 342, the rule is thus expressed: “I take it for a general rule, that unless the statute be recited, neither the words contra formam statuti, nor any periphrasis, intendment or conclusion, will make good an indictment which does not bring the fact prohibited or commanded, in the doing or not doing whereof the offense consists, within all the material words of the statute.”
T.o apply that rule to this case: The statute here requires, to constitute the crime of murder, not only the shooting to have been fatal, but that it should be done with the intention to kill. Tet while the indictment charges the act to be done with all the other attendant requisites and circumstances, it has omitted this essential one; and the averments in the conclusion do not repeat the charge, or attempt to renew it. If, indeed, all the averments contained in-the conclusion were taken together, and stood transposed into the body of the indictment, they would still be insufficient to supply the defect. Eor, although containing the word purposely, the conclusion does not contain'the necessary averments of the time,- place and manner of perpetrating the crime necessary to constitute a perfect charge in an indictment.
The general rule of pleading as to the statement of the offense in the indictment, as expressed by Mr. ‘Archbold, is, “ that all the material facts and circumstances comprised in the definition of the offense, whether by a rule *320 of tbe common law or by statute, must be stated; if any one material fact or circumstance be omitted, tbe indictment will be bad.” A material ingredient, and one necessary to constitute tbe statutory crime of murder in this state, is evidently wanting in tbe attempted statement and charge of the crime in this indictment; and this defect, as we have seen, cannot in fact be cured by any averments expressed in the conclusion of an indictment, without a disregard of well established rules of criminal pleading. And even if such disregard of rule were allowable in any case, in the present instance it could not avail to cure the defect in the indictment, for the reason that the averments in the conclusion of the indictment are, of themselves, insufficient to cure such defect in the description and charge of the crime.
But it is said, as a reason against holding indictments ,of this kind insufficient in law, that there have doubtless been convictions and sentences carried into execution upon such indictments, since the word “purposely” has been so made essential by the statute of this state to the correctly charging the crime of murder. If this be so, and if previous errors have to some extent obtained under the change of our statute, owing to the fact of attention not having been directed to the subject, it would be but a poor reparation for such past, errors to knowingly suffer their continuance in future, when specially pointed out and a correction of the errors asked of the court by a party aggrieved. The maxim communis error facit jus, should certainly have no application to such a case, even if the error had obtained much more extensively than it can possibly be supposed to have done.
But it is unnecessary to add, more than to say, we think this case falls clearly within the holding of the court in the ease of Jonas Fouts v. The State, reported in this volume, p. 98. This question, in that case, came for the first time before this court for their opinion, being specially presented by that record, as it is here presented. A majority of *321 the court, in that case, after a careful examination of the subject, came to the conclusion that to constitute a valid charge of murder under the statute upon which this indictment is framed, it is indispensably necessary that the accused should be charged in the indictment with having purposely committed the homicide. The same doctrine has since been affirmed by a majority of the court in the cases of Loeffner v. The State, incidentally; and in the case of Robbins v. The State, in which the question was again directly presented. In the opinion, by the Chief Justice, given in that case, the whole subject has been treated, and the reasons and conclusions of the majority of the court have been very fully and ably presented.
. We think it unnecessary, therefore, to here, in conclusion, add, more than to say, that, regarding this case as coming clearly within the rule so laid down and maintained by this court in the cases referred to, it is the opinion of a majority of the court, that the indictment presented by the record in this case is defective in not charging the homicide to have been purposely committed; and that the court of common pleas erred in pronouncing judgment upon the verdict of guilty, returned thereon.
The judgment of the court of common pleas must, therefore, be reversed; and the prisoner will be remanded to Hamilton county for a new trial, which is ordered in the case.
Bartley, C. J., and Scott, J., concurred.